# JOHN ZACHARIAS v. JOHN W. NESBITT.
## GEORGE A. CAMENT v. SAME.[1]

November 25, 1921.

Nos. 22,503, 22,504.

**Highway — tree dangerous to travelers — duty of abutting owner.**

1. There is no legal duty resting on the servient fee owner, upon whose land is a duly established county road, to safeguard the traveler on such road against dangers from defects in growing trees standing within the limits of the road.

**Not changed by notice to owner to remove trees.**

2. The fact that the town board, in anticipating the grading of a roadway upon the right of way, gave notice to defendant to remove the trees thereon, could not place him under the legal duty to so do.

Two actions in the district court for Hennepin county, one to recover $24,800 and the other to recover $7,450 for injuries received from a falling tree. Defendant's demurrer to the amended complaint in the Zacharias case was overruled by Steele, J. The cases were tried together before Waite, J., who when plaintiff rested at the close of the testimony denied defendant's motion for a directed verdict in each case, and a jury which returned a verdict for $3,250 and $900, respectively. From orders denying his motions for judgment notwithstanding the verdict or for a new trial, defendant appealed. Reversed with direction.

*Carleton & Carleton* and *Kingman, Cross, Morley & Cant,* for appellant.

*Louis Solem* and *W. H. McDonald,* for respondent.

HOLT, J.

During a windy April day a tree standing on defendant's land, but within the limits of a public highway in Hennepin county, fell across

[1]Reported in 185 N. W. 295.

the traveled part of the highway, injuring severely two young men who then happened to drive past in an automobile. Each sued defendant. The actions were tried as one. Separate verdicts of substantial amounts were given the plaintiffs. Defendant appeals from the order denying his motion in the alternative for judgment notwithstanding the verdicts or a new trial.

South of defendant's land the Shakopee road runs east and west, and on the east thereof is the Highland road, also called County Road No. 134. The latter has existed for over 20 years as a duly laid out public highway, four rods wide. About 1,400 feet north of the Shakopee road, between the graded driveway and the west boundary of the Highland road the tree in question grew. It stood on ground owned by defendant subject to the easement of the public road. It was a large white oak, estimated to be over 160 years old. There was a defect in it, such as is often seen in old trees. On the easterly side, near the bottom and between two roots was a hole or cavity, variously described as being from the size of a squirrel hole to an opening several inches across and up to two feet high. One old man testified that this opening had existed practically in the same condition for over 40 years. There is evidence that fire had been set in this opening a day or two before the tree fell, and was burning at the time of the accident. No claim is made that defendant knew of, or was responsible for, this fire. The tree near the ground was over three feet in diameter. After it fell the trunk was sawed off some 12 feet from where it broke, and there showed sound greenwood all through. It is uncontradicted that it leafed out each year, and that the bark was intact all around, except where the hole was. From the ground up to about nine feet it was hollow, as disclosed after it fell, the outer rim or shell, with the bark, being only a few inches thick at places. The wind was very strong during the day of the accident, registering a velocity of about 27 miles an hour. However, this was not an exceptionally high April wind. In the view we take of the case it is not necessary to further state the contentions in respect to the condition of the tree, or defendant's knowledge thereof.

The actions were predicated upon defendant's negligence in suffering the tree which he knew or ought to have known to be a menace to safe

travel to remain on the right of way. In other words, he is charged with a failure of duty. If no duty rested upon him to protect travelers against dangers lurking in trees growing upon the highway, the verdicts have no foundation, and there should be judgment notwithstanding.

Where the tree stood, the public held a dominant easement and defendant the servient fee. He no doubt could have cut down and appropriated the tree at any time he saw fit. The timber belonged to him. Town of Rost v. O'Connor, 145 Minn. 81, 176 N. W. 166, 9 A.L.R. 1265. But the highway authorities could likewise have cut down the tree, if dangerous to travelers. When this tree fell across the road, the duty to remove it did not rest on defendant, but on the public authorities charged with the supervision and maintenance of the road. Blackwell v. Hill, 76 Mo. App. 46. While the abutting owner may remove from the highway material not needed or essential for the construction or repair of the same, there is no affirmative act required of him so to do in order to maintain the easement in condition for safe use. Defendant could not have been compelled by law to cut down and remove this tree upon proof that it was a menace to travelers. He was not bound to assume control over or appropriate any tree growing upon the right of way. He had not placed it there. The servient fee owner to a dominant highway easement is not supposed to patrol the road and examine the trees growing thereon to ascertain at his peril whether they or any limbs thereof are likely to fall in the often violent storms so frequent in this state. The authorities chargeable with the maintenance of streets and highways generally have been held to the duty of protecting against dangers from falling trees and branches. This negatives such duty on abutters or servient fee owners. Jones v. City of New Haven, 34 Conn. 1; Chase v. City of Lowell, 151 Mass. 422, 24 N. E. 212; Wright v. City of Chelsea, 207 Mass. 460, 93 N. E. 840; Lundy v. City of Sedalia, 162 Mo. App. 218, 144 S. W. 889; McGarey v. City of New York, 89 App. Div. 500, 85 N. Y. Supp. 861; Vosper v. Mayor, etc.; of New York, 17 Jones & S. (N. Y.) 296. The same is the case where a limb hangs so low over the way as to injure a driver. Embler v. Town of Wallkill, 132 N. Y. 222, 30 N. E. 404. And that

accords with the general rule that, where a duty is imposed, a failure to discharge the same, which results in an injury to another, gives rise to a cause of action against the one who failed in such duty.

However, some courts hold that, when this duty is placed by statute on a municipality as a governmental agency, there is no liability unless in virtue of an expressed purpose so to do. So in this state it has long been settled law that a town is not liable for damages occasioned by defects in its public highways, although charged with the duty of keeping them in repair. Altnow v. Town of Sibley, 30 Minn. 186, 14 N. W. 877, 44 Am. Rep. 877. But that does not mean that liability for injuries for defects in rural highways must be placed by the courts upon some one else. It is asserted in Hewison v. City of New Haven, 37 Conn. 475, 9 Am. Rep. 342: "The owners of trees standing on the highway are liable at common law for injuries occurring in consequence of their neglect to trim them and keep them safe." If this be true, there might be some substance to the claim for a recovery here. The court, however, cites no authority and our search reveals none. Neither Blackstone nor Kent suggests the existence of such a common law doctrine. The case of Weller v. McCormick, 52 N. J. Law, 470, 19 Atl. 1101, 8 L.R.A. 798, is the authority for the rule that, where a tree has been planted in a public street in part to serve the desires of the abutting owner, a duty rests upon him to protect the traveler against any defects that might develop in the tree.

Whether a different rule should apply to trees planted by the abutting owner in a village or city street and trees found growing upon a rural highway when laid out, we shall not now stop to determine. But we conclude that there is no affirmative duty imposed by law upon the owners of land abutting a duly laid out country road to examine the trees growing thereon and remove those which, because of decay or other conditions, might be liable to fall or shed branches during storms or high winds. Many of our public highways pass through timbered country, and upon the prairies owners have been encouraged to plant trees. It will add a very heavy burden on the servient fee owner if he must exercise the supervision and care for the dominant easement in this respect. If such a duty is laid upon him he becomes liable, in

case of a failure, to respond in damages that may sweep away the value of his whole farm by some unfortunate accident like the present. Severe wind storms are not rare in this state, and a jury influenced by sympathy for the injured party are so prone to find the accident the result of negligence upon the slightest pretext. It is not readily determined by looking at, or even by carefully examining, a tree whether or not it or some of its branches may be apt to fall in a storm or strong wind. We think the risk from falling trees located on rural highways must be assumed by the traveler, since the authorities, charged with the duty of the maintenance of such road, act only in a governmental capacity under the law as it now exists.

In Michigan, by express statute, towns are liable for neglect in the maintenance of roads, but the court, in Miller v. City of Detroit, 156 Mich. 630, 121 N. W. 490, 16 Ann. Cas. 832, 132 Am. St. 537, construed the statute not to extend to guarding against overhead dangers, and observed in respect thereto [p. 634] : "We may take judicial notice that many trees annually shed large numbers of dead limbs. Usually they are small in proportion to the limb in this case, but many are large enough to seriously injure a person upon whom they should fall. They are all within this rule contended for; and never in the history of the country has there been an attempt to compel municipalities or private persons to assume the dangerous and expensive burden of anticipating and performing the function, so well and so far so safely performed by nature, of maintaining a living tree in a safe condition." There was no contradiction of the testimony that the oak here in question was a living tree.

The general rule as stated in Elliott, Roads and Streets (3d ed.) § 898, is: "In the absence of any legislative enactment upon the subject, an abutting landowner is not liable to travelers for injuries received by them because of a defect in the street in front of his premises, unless such defect was caused by his own act or fault." Decayed limbs of trees, or trees likely to fall, are usually regarded as defects in highways, which those charged with the duty of maintenance should remedy or remove, as indicated by the authorities first above cited. In Noonan v. Stillwater, 33 Minn. 198, 22 N. W. 444, 53 Am. Rep. 23, it

was held, in effect, that the responsibility and consequent liability of safe maintenance of a street could not be shifted from the municipality to the abutting owners so as to give rise to a cause of action against the latter in favor of one injured because of negligence in remedying defects.

In 1915 in contemplation of grading a roadway in front of defendant's land, the town supervisors served a written notice upon him to remove the trees from the limits of the road. He did not do so. This notice could have no effect in creating a duty not otherwise imposed by law. It is also plain that this notice was only intended to give defendant warning that, if he wished to exercise his right to remove and appropriate the trees growing in the roadway to be graded, he must do so. If not, the supervisors would do it. As stated above, the law does not compel him to do any work, or to do any affirmative act in respect to the natural objects found in or upon the highway limits in order to protect travelers thereon.

This conclusion leads to a reversal of the order denying judgment notwithstanding the verdict, and other errors assigned need not be mentioned.

The order denying defendant judgment is reversed, and the causes remanded with direction to enter judgment in each case in favor of defendant notwithstanding the verdict.